CONE *v.* AMERICAN ELECTRIC FUSE CO.

1. EVIDENCE—SALES—CONTRACT—IDENTITY OF BUYER—CONVERSA-
TION WITH THIRD PERSON.

> In assumpsit for the price of coal claimed to have been furnish-
> ed to defendants, and claimed by defendants to have been
> furnished to third persons from whom defendants were rent-
> ing a factory, testimony of plaintiff that he overheard a con-
> versation between defendant and another person, in which
> defendant assured the other person that all materials there-
> after furnished the factory would be paid for as he had plenty
> of money, is inadmissible.

2. TRIAL—INSTRUCTIONS—MISCONSTRUING EVIDENCE.

> In assumpsit for the price of certain coal claimed to have been
> furnished to defendants, and by them claimed to have been
> furnished to third persons from whom defendants were rent-
> ing a factory, an instruction that erroneously assumes that a
> conversation with one of defendants, in which he made a
> statement as to his resources and those of the other defend-
> ant, a corporation of which he was an officer, was had before
> the coal was furnished, is prejudicial to defendants.

Error to Lenawee; Chester, J. Submitted May 4,
1906. (Docket No. 108.) Decided September 20, 1906.

Assumpsit by Elias W. Cone against the American
Electric Fuse Company and Frank G. Jones for goods
sold and delivered. There was judgment for plaintiff,
and defendants bring error. Reversed.

*Theodore M. Joslin,* for appellants.

*Smith, Baldwin & Alexander,* for appellee.

McALVAY, J. This is an action of assumpsit brought
by plaintiff against defendants, for the price and value of
coal claimed to have been sold on their order. Defendant
Jones was the president of the American Electric Fuse
Company, an Illinois corporation. In the year 1901 this

company entered into contract with the Gilliland Electric Company of Adrian, Mich., to have manufactured by it at its factory certain products upon certain terms. Defendant Jones received a certain amount of stock of the Gilliland Company and was elected its treasurer. Later the said company became financially embarrassed, and July 9, 1902, defendant company leased from it its plant at an annual rental of $5,000 in addition to taxes, insurance, and repairs. Plaintiff was a coal dealer and had been dealing with the Gilliland Company, selling it coal. He claims that in February, 1902, he was called to the Gilliland office where he first met Jones and was introduced to him by Gilliland. Talk was had with reference to coal and prices. He says he sold them coal at a certain price. Coal was afterwards delivered at the Gilliland Company's plant on phone orders from the office. The account of coal sold was presented to Jones several times and payments were made on it by Jones' orders at the office. This account was kept by plaintiff against the Gilliland Electric Company, and he took this company's note for the balance of $200, and this note was renewed for the same amount. He claims that he did not know he was taking the paper of this company; that he did not look at the signature; that he supposed he got Jones' note. The same was true of the renewal. The foregoing in brief is the outline of plaintiff's case. That is, that the coal in question was furnished at the request and upon the credit of defendants. On the part of defendants all of these facts were denied, it being claimed that these dealings were had with the Gilliland Company and its officers. A verdict for plaintiff was found by the jury against both defendants.

Of the errors assigned we will first consider those which relate to the admission of evidence. Subject to the objection of defendants, plaintiff was permitted to testify that he overheard a conversation between Jones and a Mr. Young, of the firm of Lesh & Young, relative to purchasing some lumber. He testified:

"I heard him say to Mr. Young that hereafter all the lumber and stuff that he might send to the Gilliland Electric Company he would pay for, he had plenty of money. * * *

"Why, they wanted to buy lumber of Mr. Young, wanted Mr. Young to furnish them lumber for their manufacturing purpose, and it appears that Mr. Young was a little afraid to let the old Gilliland Electric Company have stuff, you know, but Mr. Jones told them that he needn't be afraid."

The court in referring to this matter charged:

"Plaintiff claims that some time prior to February, 1902, he met defendant Frank G. Jones at Lesh & Young's mill and was there introduced to Mr. Jones; and plaintiff claims that he then and there heard Mr. Jones state, in substance, that hereafter he would pay all bills for such material as was furnished at the Gilliland Electric Company's factory."

This claimed conversation occurred before the purchase of coal plaintiff claims defendant made, and had no connection whatever with such claimed purchase, and no promise was made at the time to plaintiff or conversation had with Jones concerning coal. This testimony was incompetent and immaterial and in no way tended to prove a contract between the parties to this suit, and should not have been allowed. It was error not to strike it out. The court was in error in charging the jury in reference to it as bearing upon the question of the claimed agreement between the parties.

Several errors are assigned upon the allowance of questions put to plaintiff of an extremely leading and suggestive character. While we do not say that it was reversible error to permit them to be answered, the practice of examining witnesses in this manner should be avoided.

Error is assigned to the following portion of the charge of the court:

"* * * That later he was called to the office in the Gilliland Electric Company's factory and there had a conversation with Mr. Jones. Plaintiff claims that at

this time Jones, in substance, stated to him that they—or we—had been getting coal from Mr. Stevenson but that they would purchase from him (plaintiff) and would prefer to do so if plaintiff would meet certain prices which Jones then submitted. Plaintiff claims that Jones then represented that he had rented the factory for $5,000 a year and was financially responsible and would pay for the coal. Plaintiff claims that at that time Mr. Jones exhibited to him a financial statement in which he claimed there were resources to the amount of $25,000 or $30,000 over and above liabilities. Plaintiff claims that they thereupon agreed upon a price, and that plaintiff was to furnish the coal to defendants, Mr. Jones and the American Electric Fuse Company."

It is urged that this is misleading and tended to confuse the jury. The record shows that the conversation relative to renting the factory for $5,000 a year and the financial statement referred to in the charge, did not occur until after all of the claimed indebtedness was incurred and the coal delivered, and was at the time the Gilliland note was given or when it was renewed. We think the objection is well taken. The court was certainly mistaken, and from the charge the jury must have inferred that this was part of the conversation when it is claimed the agreement was made and on account of which plaintiff was induced to act. The mistake was misleading and prejudicial, and the charge was erroneous.

From an examination of the other errors assigned, we are satisfied that none of them require attention.

The judgment is reversed, and a new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.